# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMY VIGGIANO, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiff,<br><br>    v.<br><br>KOHL'S DEPARTMENT STORES, INC.<br><br>    Defendant. | Civil Action No. 3:17-cv-00243-BRM-TJB<br><br>Honorable Brian R. Martinotti<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT KOHL'S DEPARTMENT STORES, INC.'S NOTICE OF SUPPLEMENTAL AUTHORITY** |

Gerald H. Clark, Esq. NJ Bar No.048281997
Mark W. Morris, Esq. NJ Bar No. 18292015
**CLARK LAW FIRM, PC**
811 Sixteenth Avenue
Belmar, New Jersey 07719
Phone: (732) 443-0333
Fax (732) 894-9647
Fax: (504) 524-5763

Scott J. Ferrell (*PHV pending*)
Victoria C. Knowles, Esq. (*PHV pending*)
Pacific Trial Attorneys, APC
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Phone: (949) 706-6464
Fax: (949) 706-6469

*Attorneys for Plaintiff*

1

In filing its recent Notice of Supplemental Authority on August 22, 2017, (ECF #14), Defendant has cited a recent unpublished ruling in *Winner v. Kohl's Department Stores, Inc.*, No. 2:16-cv-1541-JP (E.D. Pa. Aug. 17, 2017) ("*Winner*"), and set forth a detailed legal argument as to why such ruling supports its position on its pending motion to dismiss. Plaintiff hereby submits her response to such citation and legal argument.

*Winner* is distinguishable and unpersuasive for the cited proposition of law for multiple reasons.

### A.   *Winner* Is Not Binding or Precedential.

As an initial matter, it is well-established that federal district court rulings are not binding on any court including on the judge that issued a ruling. "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 131 S. Ct. 2020, 2033 n.7 (2011) (quoting 18 Moore's Federal Practice § 134.02[1][d]). Thus, *Winner* has no precedential or binding effect.

### B.   *Winner* Applied a Different Legal Standard, Which Affected Its Outcome.

*Winner* was decided for lack of constitutional standing based on a "factual" attack, which allowed the district court to "weigh the alleged facts, and consider

1

evidence outside the pleadings." (*Winner*, slip op. at 12.)  Significantly, the district court therein did not give **any presumption of truthfulness to the non-moving party's allegations**. *Id.*  The district court imposed the burden of persuasion on the plaintiff to convince the court as to the existence of jurisdiction.  *Id.*  Thus, the burden-shifting and the district court's refusal to construe any of the factual allegations in the operative complaint in favor of the plaintiffs therein are crucial distinctions that differentiate the motion in the instant action from the motion at issue in *Winner*.  In other words, the different legal standard at issue in *Winner* surely affected its outcome.  For example, the operative complaint in *Winner* alleged that one of the named plaintiffs had "repeatedly requested that Kohl's stop sending messages to her, but her requests went unheeded."  (*See* First Am. Compl. in *Winner* ¶ 32; ECF #31 in Case No. 2:16-cv-01541-JP (E.D. Pa.); Pl.'s SRJN Ex. 3.)  If such complaint's factual allegations had been construed in favor of the plaintiffs as would a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, then surely such factual allegations would have led the district court to have rejected the dismissal of such TCPA claim at least as to the revocation of consent issue.

      **C.**    ***Winner* Is Factually and Legally Distinguishable.**

*Winner* is both factually and legally distinguishable as addressed below.

2

### 1. The Vast Majority of *Winner*'s Analysis and Holding Relating Prior Express Consent Doesn't Apply Here.

The district court in *Winner* held that both of the named plaintiffs in that case had provided prior express consent under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 *et seq*. *Winner*, slip op. at 16 ("We find that Plaintiff Winner and Plaintiff Jennings expressly consented to receive Defendant's autodialed calls to action telemarketing texts. The facts contained in the Stipulation establish that both Winner and Jennings gave prior express consent under the TCPA through a method made permissible by the E-Sign Act. Because they consented to receiving the texts, Plaintiffs can show no concrete and particularized injury-in-fact and thus have not established that they have standing to pursue the claims asserted in the FAC.").

In contrast, the existence of prior express consent is not at issue here. Rather, the issue challenged via the instant Motion to Dismiss is the separate and distinct issue of revocation of consent. Thus, the vast majority of the analysis and holding in *Winner* simply does not apply here.

Indeed, the operative complaint in *Winner*, the first amended complaint, failed to make *any* allegations at all that one of the two named plaintiffs in that case, an individual named Destiny Jennings, ever made any attempt whatsoever to revoke her consent to receiving text messages from Kohl's. (*See* First Am. Compl.

3

in *Winner* ¶¶ 46-62; ECF #31 in Case No. 2:16-cv-01541-JP (E.D. Pa.); Pl.'s SRJN Ex. 3.)

### 2. The Revocation of Consent Analysis Regarding Plaintiff Winner Is Unpersuasive Because of the Sheer Lack of Purported Text Messages Revoking Consent Prior to the Undisputed Text that Successfully Revoked Consent.

As for the other named plaintiff in *Winner*, an individual named Lynne Winner, the first amended complaint in *Winner* alleged that "Ms. Winner repeatedly requested that Kohl's stop sending messages to her, but her requests were unheeded." (First Am. Compl. in Winner ¶ 32; ECF #31 in Case No. 2:16-cv-01541-JP (E.D. Pa.).) In addition, the operative complaint therein also alleged, "On at least one occasion, Ms. Winner visited a Kohl's store and spoke to a Kohl's employee about getting the text messages to stop. The Kohl's employee was unable to help Ms. Winner make the text messages stop."[1] *Id.* ¶ 33.

The district court in *Winner* ruled as follows:

> "Although Winner asserts that she repeatedly asked Defendant to stop sending messages to her phone, and that those requests went unheeded, ***she does not specify how she made these requests other than one visit she made to a Kohl's store in which she asked an employee to get the text***

---

[1] Notably, this factual allegation was omitted from the parties' Stipulation of Fact that was filed with the district court in *Winner* on March 2, 2017 in preparation for the then-contemplated evidentiary hearing regarding standing to sue. (*See* Stipulation of Fact at 3 in *Winner*; SRJN Ex. 4.) Thus, this appears to have been a disputed issue of fact that Kohl's was unwilling to stipulate to.

4

> *messages to stop. This action did not comply with the terms and conditions of the program and is thus insufficient to create an injury-in-fact based on Defendant's failure to stop the texts.* The parties stipulate that Defendant received a "STOP" text from Winner's phone on March 24, 2016, and that *Kohl's has no record of any other request made by Winner for Defendant to stop sending text messages to her phone number.* (Stip. ¶ 10.) They further stipulate that (1) when Winner followed the prescribed method for stopping the telemarketing texts, the only additional text she received was a confirmation that she had unsubscribed from the program and (2) Defendant has sent Winner no other texts. (Id. ¶¶ 11-12.) Accordingly, we find that Winner's alleged "repeated" attempts to stop the texts by efforts other than those prescribed by the program to which she consented are insufficient to establish that she suffered an injury-in-fact."

*Winner*, slip op. at 19. In other words, **plaintiff Winner was unable to demonstrate via any evidence the existence of even a single text message that she sent to Kohl's revoking her prior consent prior to March 24, 2016** (It was undisputed in *Winner* that Kohl's stopped sending Winner text messages after receiving a "STOP" text message on that particular day.). As mentioned above, the district court in *Winner*, construing the legal standard under Fed. R. Civ. P. 12(b)(1) instead of Fed. R. Civ. P. 12(b)(6), imposed upon the plaintiffs the evidentiary burden to persuade the district court that they had revoked their prior express consent. In essence, the district court in *Winner* deemed plaintiff Winner to be not credible with respect to her allegation that she had "repeatedly requested" that Kohl's stop sending text messages to her.

In contrast, here, there are numerous examples whereby it is undisputed that Plaintiff sent text messages to Defendant revoking her prior consent. (*See* Compl.

¶ 13; Decl. of Aaron Johnson of 3/29/17 ¶¶ 22, 24, 26, 28; ECF #8-2.)  Indeed, Plaintiff's text message sent to Defendant on December 13, 2016 is significant because it included the word "stop" within such message.  Indeed, as the Court will recall, Defendant previously argued, "All she had to do was respond with the single word 'stop.'"  (Mem. of Law ISO Mtn. to Dism. at 2; ECF #8-1); *id.* ("Kohl's automated system repeatedly responded with a message . . . repeating that Plaintiff could cancel messages at any time just by texting 'stop.'").  Thus, Defendant's argument is irreconcilable with the fact that Plaintiff did text the word "stop" as part of her text message sent to Defendant on December 13, 2016, as verified by the sworn Declaration of Defendant's Director of Digital Marketing, Aaron Johnson, which was submitted by Defendant.[2]  (Johnson Decl. ¶ 28; ECF #8-2; Mem. of Law ISO Mtn. to Dism. at 12; ECF #8-1.)  Thus, Defendant's automated system should have flagged Plaintiff's text message as indicating her revocation of consent.  The Court can and should infer from Mr. Johnson's declaration that Defendant's automated system would have recognized multiple words other than "STOP" as constituting the revocation of consent to receive text

---

[2] Defendant argued in its Motion, "This Court can consider the full context of the exchanges relied upon by Plaintiff without converting the instant Motion to Dismiss into one for Summary Judgment."  (Mem. of Law ISO Mtn. to Dism. at 10; ECF #8-1).  Notably, Plaintiff did not object to Defendant's filing of the Johnson Declaration.

messages from Defendant. (Johnson Decl. ¶ 31) (mentioning the words "CANCEL," "QUIT," "UNSUBSCRIBE," or "END").

### 3. The Recent Class Action Settlement in *Vergara v. Uber Techs., Inc.* Demonstrates that Plaintiff's Revocation Attempt Was Not "Unorthodox".

Defendant's characterization of the foregoing "stop" text message as an "unorthodox" attempt at revocation, (Reply ISO Mtn. Dism. at 2; ECF #12), is simply wrong. Indeed, this Court can and should take judicial notice of a recent class action settlement in *Vergara v. Uber Techs., Inc.*, No. 1:15-cv-06942 (N.D. Ill. Aug. 11, 2017), which is subject to court approval, providing for prospective relief whereby the word "stop" was included among a list of words and phrases that shall trigger the removal of consumers from receiving text messages from the well-known ride sharing company, Uber. In particular, the unopposed motion in *Vergara* stated in relevant part as follows:

- "As stated in the Complaint, Plaintiffs also claim that, during the relevant time period, Uber's messaging system lacked the ability to recognize and honor individuals' requests that Uber cease sending them text messages, even where Uber received multiple such requests." (Pl.'s Unopposed Mtn. for Prel. Approval of Class Action Settlement at 6 in *Vergara*; ECF #85; Pl.'s SRJN Ex. 5.)

7

- "In response to this litigation, Uber has already implemented changes designed to more faithfully honor text message recipients' opt-out requests." *Id.* at 13.

- "Uber has agreed to maintain the robust opt-out protocol that it instituted after the cases were filed. Id. At a minimum, this opt-out protocol entails utilizing a robust set of opt-out terms that Uber's system is capable of recognizing, which will facilitate Uber's system's ability to correctly identify and abide by consumers' attempts to revoke consent to receive future messages." *Id.* at 14.

The class action Settlement Agreement states in paragraph 48(b):

> "Uber agrees that for at least two years from the Effective Date it will maintain an opt-out protocol for recipients of text messages who initiate but do not complete the driver sign up process, which will at a minimum unsubscribe recipients from pipeline driver SMS messaging who reply with any of the opt-out words or phrases on Appendix A."

(Settlement Agreement ¶ 48(b) in *Vergara*; Pl.'s SRJN Ex. 6.)  Appendix A to such Settlement Agreement contains a list of 14 English language words that will trigger Uber to unsubscribe class members.  Those words are:

1. stop
2. remove

8

3. don't send

4. opt-out

5. opt out

6. optout

7. sms off

8. cancel

9. spam

10. remover

11. don't text

12. don't contact

13. do not contact

14. [expletive curse word]

(Settlement Agt. App. A in *Vergara*; Pl.'s SRJN Ex. 6.)  Notably, according to Aaron Johnson's sworn declaration, Plaintiff sent a text message to Defendant on December 2, 2016 including the phrase "don't send." (Johnson Decl. of 3/29/17 ¶ 24.)

The foregoing amply illustrates that the technology surely exists for merchants like Defendant to include numerous words or phrases to trigger opt-outs from receiving text messages without requiring any human intervention. As the Court will surely recall, Defendant speculated in support of the instant Motion that

the Complaint alleges that a "human being" must monitor all inbound communications and "manually cancel text messages subscriptions in response to inbound messages." (Mem. of Law ISO Mtn. to Dism. at 13; ECF #8-1.) Defendant's argument does not constitute a fair reading of the factual allegations of the Complaint, which must be construed in the light most favorable to Plaintiff (not Defendant). *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005).

### 4. The *Winner* Court Expressly Refused to Consider the FCC's 2015 Order, Which Provided Guidance on Revocation of Consent.

In regards to the district court's analysis in *Winner* whereby the district court referenced plaintiff Winner's in-person visit to a Kohl's store and asking of a store employee for help in opt-ing out of future text messages was inadequate, as mentioned above, the factual allegation regarding the purported in-person visit was omitted from the parties' Stipulation of Fact filed in advance of the resolution of the motion to dismiss in *Winner*. (SRJN Ex. 4.) Moreover, the district court's sole finding was that such in-store activity "did not comply with the terms and conditions of the program." (*Winner*, slip op. at 19.) In other words, the district court in *Winner* made no attempt at all to reconcile its finding with the FCC's guidance in its 2015 Order, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (July 10, 2015)

("2015 Order"); Pl.'s Request for Judicial Notice in Support of Pl.'s Mem. of Law in Opp'n to Mtn. Dismiss dated 5/1/17 Ex. 2 [ECF #11-3], with respect to its reference to revocation of consent. The 2015 Order squarely addressed the question whether a caller can designate the exclusive means by which consumers must revoke consent, 30 FCC Rcd. at 7996, ¶ 63, and answered such question in the negative by "finding that callers may not control consumers' ability to revoke consent," *id.* The 2015 Order authorizes individuals to revoke consent "at any time and through any reasonable means" of their choosing. 30 FCC Rcd. at 7989-90, 7993, ¶¶ 47, 55. The 2015 Order added: "We . . . clarify that consumers may revoke consent in any manner that clearly expresses a desire not to receive further messages, and that **callers may not infringe on that ability by designating an exclusive means to revoke**." (30 FCC Rcd. at 7996, ¶ 63) (emphasis added). The 2015 Order stated, "Consumers have a right to revoke consent, using any reasonable method including orally or in writing." *Id.* at 7996, at ¶ 64. Federal district courts are "bound by the FCC's interpretations of the TCPA, unless those interpretations are invalided by a court of appeals." *Reardon v. Uber* Techns*., Inc.*, 115 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015) (citing *Pac. Bell v. Pac-West Telecomm, Inc.*, 325 F.3d 1114, 1125 (9th Cir. 2003)). Thus, the district court in *Winner* erred by failing to follow the FCC's interpretation of the 2015 Order.

Indeed, the district court in *Winner* held that the FCC's 2015 Order was not applicable to the facts at issue in that particular case "because the events in this case occurred before that Order was promulgated." (*Winner*, slip op. at 21.) As the district court explained, "Plaintiffs offer no explanation of how Defendant could be bound by an FCC Order that was not in existence at the time Plaintiffs consented to receive the autodialed telemarketing texts." *Id.* Notably, the district court in *Winner* made no attempt to analyze the presumption of retroactivity. Indeed, in *Schweitzer v. Comenity Bank*, -- F.3d --, No. 16-10498, 2017 WL 3429381 (11th Cir. Aug. 10, 2017), the Eleventh Circuit recently held, "Although the FCC issued its 2015 ruling after the events in this case, we agree with the parties that we should treat it as persuasive because it is clarifying in nature as to the matter of consent." *Id.* at *3 n.1.

In any event, the district court's explanation underscores the fact that the district court in *Winner* did not rely upon the 2015 Order as guidance in analyzing the issue of revocation of consent. As such, Defendant's reliance upon *Winner* as providing any useful guidance as to such issue is misplaced. The bottom line is that the district court in *Winner* ignored the FCC's 2015 Order, (*see* 30 FCC Rcd. at 7989-90, 7996, ¶¶ 47, 55, 63, 64), by implicitly indicating that the plaintiff therein was bound to reply "STOP" to revoke consent, as dictated by the caller (*i.e.*, Kohl's).

12

The irony, of course, is that the holding in *Winner* flatly contradicts Defendant's position in its Reply whereby Defendant freely argued that, "She does not say, for example, that she called Kohl's, spoke to a live person, and asked that the messages be stopped." (Def.'s Reply ISO Mtn. to Dism. at 2; ECF #12.)  If anything, this contradiction underscores the fact that Defendant's position is inherently inconsistent throughout its briefing of its Motion to Dismiss.  In other words, in *Winner*, Defendant apparently took the position that communicating with a live person (in person) is insufficient to trigger the revocation of consent.  Here, in contrast, Defendant apparently takes the position that calling Defendant's customer service telephone service to revoke consent would have sufficed.  Why should it matter whether a customer calls a customer service telephone service versus travels to an actual store location and communicates face-to-face with a store employee?  Indeed, given Defendant's position in *Winner*, it is clear that even Defendant's hypothetical argument that Plaintiff should have called Defendant's customer service telephone service to revoke consent is not credible given that Defendant's ultimate position is that the only way that Plaintiff could have revoked consent was to send Defendant a text message using a single word "STOP".  Plaintiff submits that the 2015 Order and case law including the Ninth Circuit's published decision in *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) (holding that the called person is "not limited to" "messaging

13

'STOP' after receiving the first text message.") (stating that "[t]he FCC emphasized that the TCPA does not permit the calling party to designate the exclusive means of revocation."), indicate that Defendant's position is wrong.

          Respectfully submitted,
          **CLARK LAW FIRM, PC**

By:   /s/    Gerald H. Clark
      _____
      **GERALD H. CLARK, ESQ.**

Gerald H. Clark, Esq. NJ Bar No.048281997
Mark W. Morris, Esq. NJ Bar No. 118292015
811 Sixteenth Avenue
Belmar, New Jersey 07719
Phone: (732) 443-0333
Fax (732) 894-9647
Fax: (504) 524-5763

Scott J. Ferrell, Esq. (*PHV pending*)
Victoria C. Knowles, Esq. (*PHV pending*)
Pacific Trial Attorneys, APC
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Phone: (949) 706-6464
Fax: (949) 706-6469

*Attorneys for Plaintiff*

Dated: August 24, 2017

14